NEIL R. O'HANLON, SBN 67018
DAVID SKAAR, SBN 265377
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
E-mail: nrohanlon@hhlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IHOP IP, LLC, IHOP FRANCHISING, LLC, and INTERNATIONAL HOUSE OF PANCAKES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NAZIMUDDIN HASHIM, and DOES 1 through 10, inclusive,<br>Defendants. | Case No. CV09-9130 GHK (AJWx)<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ELAYNE BERG-WILION AND TOM COELHO**<br><br>DATE: March 8, 2010<br>TIME: 9:30 A.M.<br>COURTROOM: 650<br>Hon. George H. King |

TO DEFENDANT AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 8, 2010 at 9:30 A.M., or as soon thereafter as counsel may be heard, in Courtroom 650 before the Hon. George H. King, located at 255 East Temple Street, Los Angeles, California, Plaintiffs IHOP IP, LLC, IHOP Franchising, LLC and International House of Pancakes, LLC ("Plaintiffs") will and do hereby move the Court for the entry of a preliminary injunction enjoining and restraining Defendant Nazimuddin Hashim ("Defendant"), his agents and employees, and all those acting in concert with him, from using in any way the trademarks of Plaintiffs identified in this motion in connection with the operation of an IHOP restaurant at 2525 Erringer Road, Simi Valley, California or

\\\LA - 098339/000013 - 456821 v1

1

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

any other unauthorized location. Said motion will be made pursuant to Fed. R. Civ. P. 65 on the ground that immediate and irreparable injury will result to Plaintiffs unless Defendant is enjoined pending trial of this action.

This motion is based upon the following:

1. This notice of motion and motion;

2. The accompanying Memorandum of Points and Authorities;

3. The accompanying Declarations of Elayne Berg-Wilion and Tom Coelho; and

4. Such other and further argument as may be presented at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 (as made applicable by Paragraph 7(c) of the Court's Order re: Case Management) which took place on December 17, 2009.

Dated: January 29, 2010

                                HOGAN & HARTSON LLP

                                By   /S/ Neil R. O'Hanlon
                                       Neil R. O'Hanlon

                                Attorneys for Plaintiffs

\\\LA - 098339/000013 - 456821 v1

−2−

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 3

II. SUMMARY OF FACTS ........................................................................................ 3

III. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION TO PREVENT DEFENDANT FROM CONTINUING TO INFRINGE THE IHOP TRADEMARKS ................................................................................................. 5

    A. Plaintiffs Are Likely to Succeed on the Merits ........................................ 5

    B. Plaintiffs Would Likely Suffer Irreparable Harm if a Preliminary Injunction is Denied ............................................................. 7

    C. The Balance of Equities Favors the Issuance of a Preliminary Injunction ................................................................................ 8

    D. The Public Interest Favors the Granting of the Preliminary Injunction .................................................................................................. 9

IV. CONCLUSION ...................................................................................................... 9

DECLARATION OF ELAYNE BERG-WILION ............................................................ 11

DECLARATION OF TOM COELHO ............................................................................. 14

\\LA - 098339/000013 - 456821 v1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Trucking Ass'n v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ............................................................................. 5

*Apple Computer, Inc. v. Formula Int'l Inc.,*
  725 F.2d 521 (9th Cir. 1984) ........................................................................... 7, 8

*Burger King Corp. v. Mason,*
  710 F.2d 1480 (11th Cir. 1983) ........................................................................... 7

*Century 21 v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988) ......................................................................... 6, 8

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,*
  794 F.2d 38 (2nd Cir. 1986) ............................................................................ 8, 9

*Costandi v. AAMCO,*
  456 F.2d 941 (9th Cir. 1972) ....................................................................... 6, 8, 9

*Cytosport, Inc. v. Vital Pharm., Inc.,*
  617 F.Supp.2d 1051 (E.D. Cal. 2009) ......................................................... 5, 8, 9

*El Pollo Loco v. Hashim,*
  316 F.3d 1032 (9th Cir. 2003) ............................................................................. 6

*GoTo.com v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) ............................................................................. 7

*Grocery Outlet Inc. v. Albertson's Inc.,*
  497 F.3d 949 (9th Cir. 2007) ............................................................................... 6

*Moroccanoil, Inc. v. Moroccan Gold, LLC,*
  590 F.Supp.2d 1271 (C.D. Cal. 2008) ................................................................. 9

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,*
  920 F.2d 187 (3rd Cir. 1990) ............................................................................... 8

*Winter v. Natural Res. Def. Council,*
  --- U.S. ----, 129 S.Ct. 365 (2008) ...................................................................... 5

**STATUTES**

15 U.S.C. §1114(1) .................................................................................................. 6

15 U.S.C. §1114(1)(a) ............................................................................................. 7

15 U.S.C. §1116 ...................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite the fact that Defendant's franchise to operate an International House of Pancakes ("IHOP") restaurant in Simi Valley was terminated on September 24, 2009, Defendant has refused to comply with his obligations upon termination and has continued to operate the restaurant as an IHOP. In so doing he has infringed IHOP's trademarks (the "Marks") by continuing to use them although he no longer has any right to do so. Under well-established law Plaintiffs are entitled to a preliminary injunction to guard the value of their reputation and goodwill and to protect against the severe risk of customer confusion caused by a terminated franchisee no longer subject to Plaintiffs' control continuing to use the Marks and operating the IHOP restaurant as if he were a franchisee in good standing.

Defendant's franchise was terminated because he repeatedly failed to remodel the subject restaurant as he previously agreed to do. The term of Defendant's franchise had been scheduled to end in 2006, and Plaintiffs agreed to extend the term another ten years based on Defendant's explicit promise that he would conduct an extensive remodel of the restaurant, in accordance with a detailed schedule of required improvements. However, rather than comply with his remodel obligations, he has simply continued to operate the IHOP restaurant while its condition has steadily declined. This has resulted in a poorly-performing restaurant that fails to meet Plaintiffs' standards, and Defendant continues to hold himself out to the public as being an authorized IHOP franchisee when in fact he is not. Defendant must be ordered to immediately cease operating the restaurant as an IHOP, since he has no continuing right to use the Marks and to take advantage of the IHOP brand following termination of his franchise.

## II. SUMMARY OF FACTS

For the last 50 years, IHOP has operated a chain of restaurants offering its guests an affordable family dining experience. Coelho Decl., ¶ 3. 99% of all

-3-

\\\LA - 098339/000013 - 456821 v1

1 locations are owned by independent franchisees, who are required to comply with
2 operating standards specified by IHOP and meet other requirements, as set forth in a
3 franchise agreement. *Id.* Defendant became an IHOP franchisee for the restaurant
4 located at 2525 Erringer Road in Simi Valley, CA on or about July 26, 2002, when
5 he was assigned the Franchise Agreement. Berg-Wilion Decl., ¶ 4.

6   In August 2006, prior to the expiration of the Franchise Agreement, the
7 parties agreed to extend the term of the agreement to June 16, 2016. *Id.* ¶ 5; Exhibit
8 9, Amendment. As an express condition of being granted the extension, Defendant
9 was obligated to remodel his IHOP restaurant in accordance with a written Scope of
10 Work. Berg-Wilion Decl., ¶ 5; Coelho Decl., ¶ 4; Exhibit 9, Amendment; Exhibit
11 10, Franchise Agreement; Exhibit C thereto, Scope of Work.

12   Defendant failed to complete the required remodel. Coelho Decl., ¶ 5. The
13 carpet, wallpaper, window treatments, tables, booths, and lighting had not been
14 updated as required by the Scope of Work and failed to comply with IHOP's
15 standards, and several items were in a state of general disrepair. *Id.* In short, the
16 overall appearance of the restaurant fell below the quality level that IHOP wishes to
17 offer its guests. *Id.*; Exhibit 12, Photos. Defendant's restaurant had also been
18 reporting weak sales as compared to other IHOP locations. Coelho Decl., ¶ 5.

19   IHOP served a Notice to Cure Default on Defendant, demanding that he
20 remodel the restaurant in accordance with the Scope of Work. Berg-Wilion Decl., ¶
21 7; Exhibit 11, Notice to Cure Default. Because Defendant failed to respond or
22 comply, IHOP terminated the Franchise Agreement on September 24, 2009. Berg-
23 Wilion Decl., ¶ 8. Pursuant to the Franchise Agreement, upon termination
24 Defendant is required to stop operating an IHOP restaurant. *Id.* ¶ 9; Exhibit 10,
25 Franchise Agreement, § 8.09 & 16.02. In particular, Defendant must stop using the
26 IHOP Marks, and must not operate his restaurant under any name that suggests that
27 it is still affiliated with IHOP. *Id.*
28

\\\LA - 098339/000013 - 456821 v1

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

—4—

Defendant continues to hold himself out as an authorized IHOP franchisee. Coelho Decl., ¶ 6. Since the termination of the Franchise Agreement, IHOP has refused to accept Defendant's payments related to his continued operation of the IHOP restaurant, and IHOP is no longer supervising, inspecting, or policing Defendant's restaurant to ensure that IHOP policies are being followed. Berg-Wilion Decl., ¶ 8; Coelho Decl., ¶ 6. Because Defendant refuses to stop using IHOP's Marks, it is impossible for guests to know that Defendant's restaurant is no longer affiliated with IHOP, and therefore they are likely to attribute to IHOP any shortcomings in their dining experience. Coelho Decl., ¶ 6. These negative customer experiences are likely to harm IHOP's good name and reputation. *Id.*

## III. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION TO PREVENT DEFENDANT FROM CONTINUING TO INFRINGE THE IHOP TRADEMARKS

A preliminary injunction should be granted to stop Defendant from continuing to operate the IHOP restaurant and thereby infringe Plaintiffs' registered trademarks. Plaintiffs are likely to succeed on the merits of their trademark infringement claims, and are likely to suffer irreparable harm in the absence of preliminary relief. Furthermore, the balance of the equities tips in favor of Plaintiffs, and there is a strong public interest in favor of granting the preliminary injunction under the present circumstances. *Winter v. Natural Res. Def. Council*, --- U.S. ----, 129 S.Ct. 365, 374 (2008) (setting forth the standard for preliminary injunctions); *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (adopting the above standard for preliminary injunctions); *Cytosport, Inc. v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1064 (E.D. Cal. 2009) (applying the above standard in the trademark context).

### A. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs are likely to succeed on the merits of their trademark infringement claims against Defendant, because they own valid, protectable trademarks and

\\\LA - 098339/000013 - 456821 v1

—5—

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

Defendant continues to use the Marks even though he is unauthorized to do so under the Franchise Agreement and federal law. Exhibit 10, Franchise Agreement, § 8.09 & 16.02; *see Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (citing 15 U.S.C. §1114(1)) (affirming a preliminary injunction to prevent continuing trademark infringement).

It is undisputed that Plaintiffs own valid Marks that are entitled to protection under federal law. A trademark registration certificate is *prima facie* evidence of a valid, exclusive, and protectable mark. *Century 21 v. Sandlin*, 846 F.2d 1175, 1177 (9th Cir. 1988). Plaintiffs own eight registered Marks, and any unauthorized use of the Marks constitutes trademark infringement. Berg-Wilion Decl., Exhibits 1 – 8, Marks; 15 U.S.C. §1114(1).

As the Franchise Agreement makes clear, Defendant's continued use of Plaintiffs' Marks is unauthorized. When Plaintiffs terminated the Franchise Agreement on or about September 24, 2009, Defendant was obligated to (a) remove and return any materials bearing the Plaintiffs' Marks, and (b) stop operating his restaurant in a way that might give the general public the impression that it is affiliated with Plaintiffs. Berg-Wilion Decl., Exhibit 10, Franchise Agreement, § 8.09 & 16.02. To this day, Defendant refuses to comply with those provisions, and continues to operate his restaurant using the Marks. Coelho Decl., ¶ 6.

Under similar facts, the 9th Circuit has repeatedly held that the trademark owner is likely to prevail on the merits of its infringement claims. For example, in *El Pollo Loco v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003), the court found likely infringement and affirmed a preliminary injunction where an ex-franchisee breached his franchise agreement, was properly terminated, and yet continued to use the franchisor's name. Likewise, in *Costandi v. AAMCO*, 456 F.2d 941, 942-43 (9th Cir. 1972), where the franchisee failed to abide by the terms of his franchise agreement, a preliminary injunction against continuing use of the franchisor's name

\\\LA - 098339/000013 - 456821 v1

—6—

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

was affirmed. As in the above cases, because the Franchise Agreement was properly terminated, Defendant is no longer authorized to use Plaintiffs' Marks.

Furthermore, Defendant's infringement creates a severe risk of customer confusion regarding the source of the franchisee's products. *See* 15 U.S.C. §1114(1)(a); *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) ("The likelihood of confusion is the central element of trademark infringement."); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."). As the Court noted in *Burger King*, a patron of a restaurant displaying a franchisor's trademarks will assume that the restaurant and franchisor are affiliated, and attribute any shortcomings of the franchise to the franchisor. 710 F.2d at 1493. "Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." *Id.* (citing *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3rd Cir. 1981)). As in *Burger King*, because of Defendant's failure to comply with the explicit conditions of the Franchise Agreement and resulting termination of the franchise, customers are likely to mistakenly attribute any shortcomings to Plaintiffs. Coelho Decl., ¶¶ 5 & 6.

Because of the high likelihood that customers will believe that Defendant is still associated with Plaintiffs, his continued use of the Marks is clearly improper under federal law. Furthermore, any such use is explicitly proscribed by the Franchise Agreement. Therefore, Plaintiffs are likely to prevail on their claims for trademark infringement.

### B. **Plaintiffs Would Likely Suffer Irreparable Harm if a Preliminary Injunction is Denied**

In the trademark context, potential damage to a business' reputation or goodwill constitutes irreparable harm. *Apple Computer, Inc. v. Formula Int'l Inc.*,

\\LA - 098339/000013 - 456821 v1

—7—

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

725 F.2d 521, 526 (9th Cir. 1984); *Costandi*, 456 F.2d at 942 (9th Cir. 1972); *Cytosport*, 617 F.Supp.2d at 1080 (E.D. Cal. 2009); *see also Century 21*, 846 F.2d at 1180 (9th Cir. 1988) ("[T]here is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). Allowing Defendant to continue to use Plaintiffs' Marks would expose Plaintiffs to severe and irreparable harm to its reputation and good will. Since the Franchise Agreement is no longer in effect, Plaintiffs have no power to supervise Defendant's restaurant; Plaintiffs have no control over its appearance, the quality of the food, or the customer service. Coelho Decl., ¶ 6. Plaintiffs have lost control over the customer experience, which directly impacts its reputation. *Id.* This loss of control over its own reputation constitutes irreparable harm. *Apple*, 725 F.2d at 526; *Cytosport*, 617 F.Supp.2d at 1080; *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir. 1990); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2nd Cir. 1986).

    C.    **The Balance of Equities Favors the Issuance of a Preliminary Injunction**

As discussed above, Plaintiffs face significant and irreparable harm to their reputation if a preliminary injunction is denied. *See Cytosport*, 617 F.Supp.2d at 1081. Plaintiffs are not seeking to put Defendant out of the restaurant business or to prevent him from competing with Plaintiffs by operating a non-IHOP restaurant. *See id.*; Berg-Wilion Decl., ¶ 9. Rather, Plaintiffs wish only to stop Defendant from improperly continuing to use the Marks in the operation of his restaurant, while Defendant is attempting to enjoy the benefits of an extended term as an IHOP franchisee without complying with the remodeling requirement that was an express condition to the extension. Berg-Wilion Decl., ¶ 9. Entry of a preliminary injunction is wholly consistent with Defendant's existing obligations under federal law and the Franchise Agreement. 15 U.S.C. §1116; *see* Exhibit 10, Franchise Agreement, sec. 8.09 & 16.02.

\\\LA - 098339/000013 - 456821 v1

–8–

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

Pursuant to the terms of the Franchise Agreement, IHOP provided Defendant with adequate notice of his breach, and gave Defendant an opportunity to cure. Exhibit 11, Notice to Cure Default. He never did. Berg-Wilion Decl., ¶ 8. Now that the Franchise Agreement has been terminated, it would be a "gross inequity" to allow him to continue to "reap the benefits" of operating under the IHOP name. *Costandi*, 456 F.2d at 943. For the foregoing reasons, the balance of equities tips in IHOP's direction, and favors the granting of the preliminary injunction.

### D. The Public Interest Favors the Granting of the Preliminary Injunction

Furthermore, granting a preliminary injunction against Defendant is in the public's best interest. In the trademark context, the public interest at risk is the right to be free from deception and confusion. *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F.Supp.2d 1271, 1282 (C.D. Cal. 2008); *Cytosport*, 617 F.Supp.2d at 1081. Nowhere is this risk more severe than in the case of a former licensee continuing its unauthorized use of the licensor's trademark. *See Church of Scientology Int'l*, 794 F.2d at 44. In that situation, "the potential for consumer confusion is greater than in the case of the random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public." *Id.* at 43. A preliminary injunction is necessary to protect the public from the confusion that is likely to result from Defendant's continued use of the Marks.

## IV. CONCLUSION

IHOP has demonstrated that (1) it is likely to succeed on the merits of its trademark infringement claims; (2) it is likely to suffer irreparable harm to its reputation in the absence of a preliminary injunction; (3) the balance of the equities favors granting a preliminary injunction; and (4) a preliminary injunction is in the

/ / /

/ / /

\\\LA - 098339/000013 - 456821 v1

—9—

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

1  public's best interest.  IHOP is entitled to a preliminary injunction to prevent
2  Defendant from continuing to infringe its registered Marks.
3
4  DATED:  January 29, 2010            HOGAN & HARTSON LLP
5
6                                      by    /S/ - Neil R. O'Hanlon
                                              Neil R. O'Hanlon
7
                                        Attorneys for Plaintiffs
8

\\\LA - 098339/000013 - 456821 v1

—10—

NOTICE OF MOTION AND MOTION OF
PLAINTIFFS FOR A PRELIMINARY
INJUNCTION; etc.

# DECLARATION OF
# ELAYNE BERG-WILION

# DECLARATION OF ELAYNE BERG-WILION

Elayne Berg-Wilion declares and states:

1. I am Associate General Counsel of DineEquity, Inc., which is the ultimate corporate parent of Plaintiffs IHOP IP, LLC, IHOP Franchising, LLC, and International House of Pancakes, LLC. I have acted as counsel for Plaintiffs and their affiliated entities and predecessors since 1979. As part of my responsibilities I oversee protection of Plaintiffs' intellectual property, including trademarks. I am also responsible for resolving disputes with IHOP franchisees, including those relating to the licensing of trademarks to franchisees and enforcing the rights of the franchisor upon termination of a franchise. In my capacity as Associate General Counsel I am also a custodian of Plaintiffs' legal files, including those relating to trademarks and disputes with franchisees. These files are kept in the ordinary course of Plaintiffs' business at or about the time of the events reflected therein. I know the following of my own personal knowledge and would so testify if called upon to do so.

2. IHOP IP, LLC has adopted and used in interstate commerce, and licensed to IHOP Franchising, LLC, certain trademarks (the "Marks") which have been registered with the United States Patent and Trademark Office in connection with the operation of IHOP restaurants, including the following:

| REGISTRATION NO. | REGISTRATION DATE |
|---|---|
| 2,942,609 | April 19, 2005 |
| 3,429,406 | May 20, 2008 |
| 3,429,405 | May 20, 2008 |
| 3,433,996 | May 27, 2008 |
| 3,429,408 | May 20, 2008 |
| 3,408,102 | April 8, 2008 |
| 3,514,724 | October 14, 2008 |
| 3,507,059 | September 30, 2008 |

\\\LA - 098339/000013 - 456821 v1

-11-

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

1  True and correct copies of the registration certificates are attached hereto as Exhibits 1 through 8, inclusive. Reg. No. 2,942,609 and Reg. No. 3,408,102 were originally registered by International House of Pancakes, Inc. but were subsequently assigned to IHOP IP, LLC.

3. Plaintiffs have used the Marks to identify their business activities and products in interstate commerce in connection with IHOP restaurants, and the Marks are intended to distinguish Plaintiffs' activities in this regard from those who are not so authorized. In addition, Plaintiffs have prominently displayed the Marks in advertising materials.

4. On or about June 17, 1991 International House of Pancakes, Inc. (the predecessor-in-interest to IHOP Franchising, LLC) entered into an "Individual Franchise Agreement" with the predecessor-in-interest of Defendant Nazimuddin Hashim ("Hashim") for an International House of Pancakes restaurant located at 2525 Erringer Road, Simi Valley, California 93065 (the "IHOP Restaurant.") On or about July 26, 2002 the 1991 franchise agreement was assigned to Hashim.

5. Prior to the expiration of the term of the 1991 franchise agreement, the parties amended it, agreeing to extend the term through and until June 16, 2016 and to enter into a new franchise agreement. As a condition of being granted the extension, Hashim agreed to complete a remodel of the IHOP Restaurant in accordance with a written Scope of Work. A copy of the executed Amendment to Individual Franchise Agreement dated August 24, 2006 (the "Amendment") is attached as Exhibit 9. The Scope of Work is Exhibit "C" to the Amendment. Attached as Exhibit 10 is a copy of the new Franchise Agreement, dated August 24, 2006 (the "Franchise Agreement"), that was executed by the parties.

6. Pursuant to Section 8.01 of the Franchise Agreement, Hashim was granted a franchise for the operation of the IHOP Restaurant and the right to use IHOP's trademarks, methods of operation and goodwill on certain conditions during the term of the Franchise Agreement.

\\\LA - 098339/000013 - 456821 v1

-12-

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

7.  Pursuant to Section 12.01 of the Franchise Agreement, on or about September 17, 2009 a Notice to Cure Default Under Franchise Agreement (the "Notice to Cure Default") was served on Hashim, demanding that he remodel the IHOP Restaurant as required by the Amendment. A copy of the Notice to Cure Default is attached as Exhibit 11.

8.  Mr. Hashim did not respond to the Notice To Cure Default Under Franchise Agreement. As a result, the Franchise Agreement terminated on or about September 24, 2009. From and after that date IHOP Franchising, LLC has refused to accept payments from Mr. Hashim relating to his continued operation of the IHOP Restaurant.

9.  Plaintiffs have demanded that Mr. Hashim stop operating the IHOP Restaurant and comply with his obligations upon termination of the Franchise Agreement, as set forth in Sections 8.09 and 16.02 of the Franchise Agreement. In particular, Plaintiffs have demanded that Mr. Hashim discontinue the use of the Marks and not operate a restaurant under any name that suggested that it was affiliated with IHOP. Plaintiffs have no objection to Mr. Hashim's continued operation of a restaurant in the subject premises, which he leases directly from his landlord. However, because of the termination of the Franchise Agreement, Mr. Hashim is not permitted to continue to operate it as an IHOP restaurant.

10. Following the termination of the Franchise Agreement the parties have made efforts to negotiate a resolution of their dispute. However, no agreement has been reached, and Mr. Hashim has continued to operate the IHOP Restaurant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 14, 2010 at Glendale, California.



ELAYNE BERG-WILION

# DECLARATION OF TOM COELHO

# DECLARATION OF TOM COELHO

TOM COELHO declares and states:

11.   I am the Regional Director for the West Region of International House of Pancakes, LLC ("IHOP"). I know the following of my own personal knowledge and would so testify if called upon to do so. I have worked for IHOP and its affiliates and predecessors for approximately fourteen years, and I have been Regional Director for the West Region for nearly six years.

12.   As Regional Director I am responsible for operations, marketing, purchasing, food safety, facility maintenance, contract and legal compliance by franchisees, and brand image for IHOP's restaurants in the Western United States. This includes the restaurant operated by a former IHOP franchisee, Nazimuddin Hashim, at 2525 Erringer Road, Simi Valley, California 93065 (the "IHOP Restaurant").

13.   IHOP competes in the family dining segment of the restaurant industry, and 99% of all IHOP restaurants are owned by independent franchise operators. For 50 years, the IHOP family restaurant chain has served its well-known pancakes and a wide variety of breakfast, lunch, and dinner items, offering its guests an affordable, everyday dining experience. IHOP has developed certain systems and procedures for operating IHOP restaurants which it designed to enable franchisees to compete more effectively in the marketplace. Franchisees are required to comply with operating standards specified by IHOP and meet other requirements, as set forth in a franchise agreement. Franchisees obtain the benefit of advertising and promotional campaigns organized by IHOP and are given the right to use IHOP's trademarks in connection with the operation of IHOP restaurants. Upon termination of a franchise, the franchisee no longer has any right to use IHOP's trademarks or continue to operate an IHOP restaurant.

14.   I understand that as a condition to obtaining an extension of the term of his franchise Mr. Hashim agreed in 2006 that he would cause the IHOP Restaurant

\\\\LA - 098339/000013 - 456821 v1

—14—

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR A PRELIMINARY INJUNCTION; etc.

1  to be remodeled.  A description of the remodel that he agreed to perform is found in
2  a written Scope of Work, attached as Exhibit "C" to the Amendment To Individual
3  Franchise Agreement that he signed.  A copy of that document is attached to the
4  Declaration of Elayne Berg-Wilion as Exhibit 9.  One important reason for
5  remodeling a restaurant is to present an attractive dining environment to guests.
6          15.     In September 2009, after IHOP had given Mr. Hashim notice that he
7  had failed to remodel the IHOP Restaurant as agreed, I instructed Rick Mileham,
8  IHOP's Franchise Business Consultant with responsibility for the IHOP Restaurant,
9  to visit it to see if Mr. Hashim had caused the premises to be remodeled in
10 accordance with the Scope of Work.  Mr. Mileham reported to me after his visit that
11 the IHOP Restaurant had not been remodeled as required, and he showed me
12 photographs he had taken during his visit.  Copies of the photos are attached as
13 Exhibit 12.  From my review it appeared that very few items on the list had been
14 addressed by Mr. Hashim, and that the IHOP Restaurant had not been remodeled for
15 many years.  In particular, the carpet, wallpaper, and window treatments pre-dated
16 2004, when IHOP updated its remodeling standards.  Similarly, the tables, booths,
17 and lighting had not been updated.  Various items needed to be repaired, such as
18 broken blinds on windows, and the general look of the premises and exterior areas
19 including landscaping was rundown and not at the quality level that IHOP wishes to
20 offer its guests.  In recent months the IHOP Restaurant has been averaging sales of
21 less than $20,000 per week, making it a weak performer as compared to other
22 comparable IHOP restaurants.
23         16.     Because of the termination of Mr. Hashim's franchise, IHOP has no
24 longer been supervising, inspecting, or policing his business establishment to ensure
25 that approved procedures are being employed to protect the public.  IHOP's business
26 is based on having a large group of franchisees who enjoy the benefit of doing
27 business under the IHOP name in return for which they pay their proportionate share
28 of the cost of achieving those benefits.  Since Mr. Hashim is continuing to hold

\\LA - 098339/000013 - 456821 v1

—15—

NOTICE OF MOTION AND MOTION OF
PLAINTIFFS FOR A PRELIMINARY
INJUNCTION; etc.

1 | himself out as being an approved IHOP franchisee, guests who dine at his restaurant
2 | have no way of knowing that he is not a current franchisee and that he is not in fact
3 | sponsored, approved, or affiliated with IHOP. Furthermore, any shortcomings in the
4 | dining experience for guests would likely be attributed by them to IHOP, thereby
5 | hurting its good name and reputation.

6 |     I declare under penalty of perjury under the laws of the United States that the
7 | foregoing is true and correct. Executed on January 13, 2010 at Glendale, California.

_____
TOM COELHO

\\LA - 098339/000013 - 456630 v1

-16-

NOTICE OF MOTION AND MOTION OF
PLAINTIFFS FOR A PRELIMINARY
INJUNCTION, etc.